## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO
Bankruptcy Judge Thomas B. McNamara

| | |
|---|---|
| In re:<br><br>PATRICK JERALD RINKER,<br><br>Debtor. | Bankruptcy Case No. 24-16963 TBM<br>Chapter 7 |
| JESSICA PRITCHETT<br>ANDREW PRITCHETT,<br><br>Plaintiffs,<br><br>v.<br><br>PATRICK JERALD RINKER,<br><br>Defendant. | Adv. Pro. No. 25-1073 TBM |

## ORDER GRANTING, IN PART, AND DENYING, IN PART, PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

### I.      Introduction.

Jessica Pritchett and Andrew Pritchett (the "Pritchetts") hold an unsecured claim against the Debtor, Patrick J. Rinker (the "Debtor"), arising from a final judgment which the Pritchetts obtained in the District Court for Denver County, Colorado (the "State Court") in an action styled *Jessica Pritchett and Andrew Pritchett v. Cannabis Corp., Jeff Mascio, Patrick James Rinker,*[1] *and Theresa Mohan*, Case No. 2023CV030761 (the "Wage Action").  The Pritchetts were employed by Cannabis Corp. ("Cannabis") for approximately four years from October 2018 to December 2022.  In November 2022, the Pritchetts took sick leave and when they returned to work, Cannabis, through the individual defendants named in the caption of the Wage Action, accused the Pritchetts of having stolen inventory and suspended them without pay.  The Pritchetts resigned and requested their final wages.  But Cannabis withheld the wages due.  The Pritchetts commenced the Wage Action in early 2023 seeking damages for retaliation and wrongfully withholding their wages in violation of Colorado law.  On July 11, 2024, the

---

[1]       The Court observes that the Debtor's name in this case is Patrick *Jerald* Rinker.  The Debtor, however, does not dispute that the Judgment which forms the basis for the Pritchetts' claim entered against him.

State Court awarded the Pritchetts a judgment in the amount of $528,355.52 against the defendants, jointly and severally, including the Debtor (the "Judgment").

On November 21, 2024, the Debtor availed himself of the protections of the United States Bankruptcy Code[2] and filed a Chapter 7 petition. In the Adversary Proceeding now before the Court, the Pritchetts seek a determination that the Judgment, which is final, should be excepted from the Debtor's discharge under Section 523(a)(6) as a debt for willful and malicious injury.

## II.      Jurisdiction and Venue.

The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334. This proceeding is a "core" matter pursuant to 28 U.S.C. §157(b)(2)(I) (determinations as to the dischargeability of particular debts) and (b)(2)(O) (other proceedings affecting the liquidation of assets of the estate). Both the Pritchetts and the Debtor consented to the Court's exercise of jurisdiction over the claims and defenses asserted in this Adversary Proceeding and to the Court's entry of final orders and judgment. (Docket No. 13).[3] Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409.

## III.      Procedural Background.[4]

### A.      The Debtor's Main Bankruptcy Case.

On November 21, 2024, the Debtor commenced his Chapter 7 case by filing a Petition. (Main Case Docket No. 1.) The Debtor sought a waiver of his filing fees (Main Case Docket No. 7, the "Application"). Based upon the Debtor's representations of his financial status in the Application, the Court granted the Application. (Main Case Docket No. 9.) His case was a "no asset" case and followed an uneventful course. The deadline to object to discharge or dischargeability of debt was February 18, 2025. The Pritchetts timely filed this Adversary Proceeding. No objections were lodged to the Debtor's entitlement to a discharge overall. As such, on May 7, 2025, the Debtor received his discharge. (Main Case Docket No. 27.) On June 11, 2025, the Court issued an Order Accepting the Chapter 7 Trustee "No Asset Final Report" and closed the Main Case. (Main Case Docket No. 30.)

### B.      The Adversary Proceeding.

---

[2]      All references to the "Bankruptcy Code" are to the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.* Unless otherwise indicated, all references to "Section" are to sections of the Bankruptcy Code.

[3]      The Court will refer to documents filed in the CM/ECF docket for this Adversary Case, Adversary Proceeding No. 23-1073 TBM by citing to "Docket No.____." At times, this Court will also refer to documents filed in the Debtor's Main Case, *In re Rinker*, Case No. 24-16963 TBM (Bankr. D. Colo.) (the "Main Case"). When doing so, the Court will refer to documents filed in the CM/ECF docket sheet for the Main Case by citing to "Main Case Docket No. _____."

[4]      The Court takes judicial notice of the dockets in this Adversary Proceeding and the Main Case for purposes of describing the procedural background. *See St. Louis Baptist Temple, Inc. v. F.D.I.C.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (a court may *sua sponte* take judicial notice of its docket).

2

The Pritchetts commenced this Adversary Proceeding by filing their "Complaint to Determine Dischargeability of Debt" (Docket No. 1, the "Complaint"). The Pritchetts seek a determination pursuant to Section 523(a)(6) that the Judgment should be excepted from the Debtor's discharge. The Pritchetts attached three exhibits to the Complaint: the Judgment (Exhibit 1); the Wage Action Complaint (Exhibit 2, the "Wage Action Complaint"); and the jury's Special Verdict Form in the Wage Action (Exhibit 3, the "Jury Verdict"). On April 8, 2025, the Debtor, who appears in this case without an attorney, filed his "Answer to Determine Dischargeability of Debtor" (Docket No. 7, the "Initial Answer"). After the Court convened the Pre-Trial Scheduling Conference on May 15, 2025 (Docket No. 13, the "Scheduling Conference"), the Debtor filed his "Modified Answer to Determine Dischargeability of Debt" (Docket No. 16, the "Answer"), That Answer is the operative Answer in this Adversary Proceeding.

In his Answer, the Debtor admitted that the State Court had issued the Judgment and that Exhibit 1 to the Complaint is a true and correct copy of the Judgment. (Ans. ¶ 3.) He also admitted that the Judgment was entered in favor of the Pritchetts and against the Debtor and his co-defendants jointly and severally in the amount of $528,355.52. (*Id.* ¶¶ 3 and 7.) With respect to the Wage Action Complaint, the Debtor admitted that Exhibit 2 is a true and correct copy of the Wage Action Complaint, and that it included the Pritchetts' claims for violation of the Healthy Families and Workplaces Act ("HFWA"), COLO. REV. STAT. §§ 8-13.3-401 *et seq*. and the Colorado Wage Claim Act (the "CWCA"), COLO. REV. STAT. §§ 8-4-101 *et seq*. (*Id.* ¶ 10.). However, the Debtor denied (without any explanation) that a jury in the Wage Action had returned the Jury Verdict and that Exhibit 3 to the Complaint is an accurate copy of the Jury Verdict. (*Id.* ¶ 12.)

At the Scheduling Conference the Court set a two-day trial on the Complaint and Answer to commence on November 4, 2025. (Docket Nos. 13 and 14.) In addition, the Court established various pretrial dates and deadlines, including a deadline of September 12, 2025, for filing dispositive motions, if any.

## C.     The Motion for Summary Judgment.

On September 12, 2025, the last possible day for filing dispositive motions, the Pritchetts filed their "Motion for Summary Judgment" (Docket No. 18, the "MSJ"). The Pritchetts purport to rely on the Judgment, the Jury Verdict and the Wage Action Complaint to establish that: (1) the Debtor acted willfully and maliciously in retaliating against the Pritchetts after they took sick leave and willfully withheld their wages; and (2) the Judgment is final and the Debtor is precluded by collateral estoppel from relitigating the facts which formed the basis for the Judgment. Specifically, the Pritchetts argue that the "allegations contained in this Adversary Proceeding flow from the exact same factual basis as those already litigated in the Wage Action. The Pritchetts further argue argue that "[i]n the Wage Action, the jury determined that Rinker willfully retaliated against the Pritchetts for using sick leave in violation of the HFWA

[and] willfully and wrongfully withheld the final pay checks in violation of the [CWCA]. . . ."  (MSJ at 13-14.)

As will be explained in more detail, the MSJ is not properly supported and fails to comply with either Fed. R. Civ. P. 56 or L.B.R. 7056-1(a) and (c).  As such, it is impossible to determine whether the alleged material facts are undisputed and whether summary judgment on the Complaint in its entirety is warranted.  Particularly, the Pritchetts list 56 paragraphs of purportedly "Undisputed Facts."  Of those, 30 are supported only by a citation to the "Wage Action Pls. Mot. Partial Summ. J. (filed Dec. 2, 2023) (the "Wage Action MSJ")." (Undisputed Facts ¶¶ 1, 3, 4, 7, 12, 14-23, 29-32, 37, 41-43, 46-52).  The Wage Action MSJ was not provided to the Court with the MSJ in this Adversary Proceeding and the Court has no access to it.  But, presumably, the Wage Action MSJ contains the Pritchetts' allegations.  The Pritchetts' assertions and arguments in another lawsuit plainly are not the type of record evidence contemplated by Fed. R. Civ. P. 56 (c)(1)(A).  In addition, there are approximately 7 paragraphs of purportedly undisputed facts which are not supported by citation to an affidavit or declaration, deposition testimony, discovery responses or admissions. (Undisputed Facts ¶¶ 2, 8, 9, 24, 38, 53 and 54.)  The Pritchetts also include twelve (12) paragraphs within their purported listing of Undisputed Facts which are pure recitations of law, such as the HFWA or the CWCA. (*See, e.g.*, Undisputed Facts ¶¶ 5, 13, 25-27, 33-34, 36, 39-40, 44-45.)  Several paragraphs include more than one alleged undisputed fact.  The remaining few paragraphs refer to the Exhibits 1, 2 and 3 (the Judgment, the Wage Action Complaint and the Jury Verdict Form).  Of those Exhibits, the Debtor in his Answer admitted the authenticity of Exhibits 1 and 2, but not Exhibit 3, the Jury Verdict.

D.    **The Debtor's Response**.

The Debtor's Response also does not comply with the applicable rules, particularly L.B.R. 7056-1(b).  The Debtor has not provided a "short and concise statement of agreement or opposition, in numbered paragraphs corresponding to those of the moving party."  L.B.R. 7056-1(b)(3).  In his Response, the Debtor disputes the findings made by the State Court: "Plaintiffs have failed to meet their burden, and material facts remain in dispute - particularly regarding the nature and origin of the conduct underlying the judgment, and Defendant's actual role in the employment decisions at issue . . .  Patrick Rinker was not involved in the decisions to withhold the Plaintiffs' pay, did not control payroll or banking systems, and did not participate in the final paycheck withholding that underpins the judgment . . .  Those decisions were made solely by Cannabis Corp's Senior Advisor to the CEO, Jeffrey Mascio, in the context of an internal investigation of alleged theft by the Plaintiffs."  (Response at 1-2.)  The Debtor filed the "Affidavit of Jeffery Mascio" (Docket No. 22, the "Mascio Affidavit") in support of his Response.  Mr. Mascio assumes full responsibility for the decisions to withhold the Pritchetts' final paychecks.

The Debtor's primary legal contention is that the Pritchetts have not shown and cannot show that their injuries were caused by both willful and malicious conduct of the Debtor within the meaning of Section 523(a)(6).  He asserts there is no evidence of

"malicious conduct" by him and, finally, that collateral estoppel does not apply to preclude relitigating the facts upon which the Pritchetts rely as the basis to except the Judgment from discharge. He maintains that the "legal standard applied in state court (e.g., wage penalties) is not equivalent to the federal bankruptcy standard under § 523(a)(6)." *Id.* at 5.

**E.    The Pritchetts' Reply.**

On September 29, 2025, the Pritchetts filed their Reply (Docket No. 25, the "Reply"). Their primary contention is that the Debtor cannot relitigate the facts that formed the basis for the Judgment. Consequently, they assert, he has not shown that any material fact is in dispute. They support the Reply with a new Exhibit 1 which they represent is the "Order Regarding Motions for Summary Judgment" entered by the State Court in the Wage Action (the "Wage Action Order on Summary Judgment"). But the Wage Action Order on Summary Judgment is not specifically tied to any purported Undisputed Facts.

## IV.    Legal Standard Governing Motions for Summary Judgment.

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure, as incorporated herein by Rule 7056 of the Federal Rules of Bankruptcy Procedure. Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying the basis for its motion and designating those portions of the record which it believes entitles it to judgment. Fed R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In reviewing a motion for summary judgment, the Court must "view the facts and evidence in the light most favorable to the nonmoving party." *Morris v. City of Colo. Springs*, 666 F.3d 654, 660 (10th Cir. 2012). One of the principal purposes of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp.*, 477 U.S. at 323-24. Therefore, unsupported, conclusory allegations will not create an issue of fact, and the non-moving party must do more than provide its subjective interpretation of the evidence. *Tran v. Sonic Indus. Servs.*, Inc., 490 Fed. Appx. 115, 117-118 (10th Cir. 2012) ("A summary judgment is appropriate if the non-moving party cannot adduce probative evidence on an element of its claim upon which it bears the burden of proof.") (citing *Rohrbaugh v. Celotex Corp.*, 53 F3d 1181, 1183 (10th Cir. 1995)). "A party cannot rely entirely on pleadings but must present significant probative evidence to support its position." *Hansen v. PT Bank Negara Indonesia (Persero)*, 706 F.3d 1244, 1247 (10th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "If the nonmoving party fails to make a sufficient showing on an essential element with respect to which [it] has the burden of proof, judgment as a matter of law is appropriate." *Id.* However, "when the evidence could lead a rational fact-finder to resolve the dispute in favor of either party, summary judgment is improper." *C.L. Frates & Co. v. Westchester Fire Ins., Co.*, 728 F.3d 1187, 1189 (10th Cir. 2013).

In this case, the Pritchetts as plaintiffs are both the moving parties under Rule 56 and the parties who bear the burden at trial to prove the elements of their Section 523(a)(6) Complaint. At this stage of the litigation, the Pritchetts must meet their initial burden of identifying the basis for their motion and designating those portions of the record which they believe entitles them to judgment. Fed R. Civ. P. 56(c); *Celotex*, 477 U.S. at 323. Then, and only then, the Debtor, as the nonmoving party, must come forward with more than unsupported or conclusory allegations. In the absence of a properly supported motion for summary judgment, such as the MSJ, the Debtor's Response is of limited consequence and his compliance with the requirements of the Court's Local Rules and Fed. R. Civ. P. 56 is of less moment.

Fed. R. Civ. P. 56(c)(3) and (g) speak to the what the Court may consider when it is presented with a motion such as the MSJ. Fed. R. Civ. P. 56(c)(3) permits the Court to "consider only the cited materials, but it may consider other materials in the record." As such, the Court may consider the Complaint and Answer and any uncontested allegations of fact drawn from those pleadings. Furthermore, pursuant to Fed. R. Civ. P. 56(g), "[i]f the court does not grant all the relief requested by the motion, it may enter an order stating any material fact — including an item of damages or other relief — that is not genuinely in dispute and treating the fact *as established in the case*." Fed. R. Civ. P. 56(g) (emphasis added).

## V.     Burden of Proof.

The Pritchetts bear the burden of establishing nondischargeability under Section 523(a) by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 287 (1991) ("requiring the creditor to establish by a preponderance of the evidence that his claim is not dischargeable reflects a fair balance between these conflicting interests."); *Houston v. Munoz (In re Munoz)*, 536 B.R. 879, 884 (Bankr. D. Colo. 2015) (noting that creditor must prove Section 523 claims by a preponderance of the evidence and citing *Grogan*). Correspondingly, to prevail on their MSJ, they must demonstrate that the undisputed material facts establish each element of a claim for willful and malicious injury under Section 523(a)(6). So what the Court must now determine from the record before it is whether the Pritchetts have established that there are material facts which are undisputed and whether such facts support summary judgment on any of the elements of a Section 523(a)(6) Complaint. As noted, in addition to the MSJ, Response, and Reply, the Court may consider any allegations of the Complaint which have been admitted by the Debtor in his Answer.

## VI.     Procedural Rules for Selecting the Undisputed Facts.

The critical first step in adjudicating a motion for summary judgment is to identify the undisputed facts. Only then can the Court apply the law to the facts and reach a legal conclusion. Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.") Procedural rules dictate how the alleged

6

undisputed facts are to be presented and challenged.  Fed. R. Civ. P. 56(c) governs the facts alleged by the movant or challenged by the non-movant:

> (c)  Procedures.
>
>> (1)  Supporting Factual Positions. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>>
>>> (A)  citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>>>
>>> (B)  showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>>
>> . . . .
>>
>> (3) Materials Not Cited. The court need consider only the cited materials, but it may consider other materials in the record.

Fed. R. Civ. P. 56(e) provides the consequences for "failing to properly support or address a fact":

> (e)  Failing to Properly Support or Address a Fact.  If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
>> (1) give an opportunity to properly support or address the fact;
>>
>> (2) consider the fact undisputed for purposes of the motion;
>>
>> (3) grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it; or

7

(4) issue any other appropriate order.

The Bankruptcy Court for the District of Colorado supplemented the Federal Rules of Civil Procedure by enacting its Local Bankruptcy Rules. L.B.R. 7056-1 governs summary judgment motions in Colorado and provides:

(a) Motion and Memorandum in Support. Any motion for summary judgment pursuant to Fed. R. Bankr. P. 7056 must include:

(1) a statement of the burden of proof;

(2) the elements of the claim(s) that must be proved to prevail on the claim(s);

(3) a short and concise statement, in numbered paragraphs containing only one fact each, of the material facts as to which the moving party contends there is no genuine issue to be tried;

(4) a statement or calculation of damages, if any; and

(5) any and all citations of law or legal argument in support of judgment as a matter of law.

The counterpoint is L.B.R. 7056-1(b) which governs oppositions to motions for summary judgment:

(b) Response and Memorandum in Opposition. Responses in opposition must include:

(1) any competing statements concerning the burden of proof, including burden shifting, together with legal authority supporting such statements;

(2) any defenses to the elements of the claim(s) that must be proved to defeat such claim(s);

(3) a short and concise statement of agreement or opposition, in numbered paragraphs corresponding to those of the moving party, of the material facts as to which it is contended there is a genuine issue to be tried;

(4) a short and concise statement, in numbered paragraphs containing only one fact or any additional

8

facts as to which the opposing party contends are material and disputed;

(5) a statement or calculation of damages, if any; and

(6) any and all citations of law or legal argument in opposition to judgment as a matter of law.

Each alleged fact or contravention of fact (whether by the movant or the non-movant) must be properly supported.  L.B.R. 7056-1(c) tells how:

(c)   Supporting Evidence.  Each statement by the movant or opponent pursuant to subdivisions (a) or (b) of this Rule, including each statement controverting any statement of material fact by a movant or opponent, must be followed by citation to admissible evidence either by reference to a specific paragraph number of an affidavit under penalty of perjury or fact contained in the record.  Affidavits must be made on personal knowledge and by a person competent to testify to the facts stated, which are admissible in evidence. Where facts referred to in an affidavit are contained in another document, such as a deposition, interrogatory answer, or admission, a copy of the relevant excerpt from the document must be attached with the relevant passages marked or highlighted.

Finally, L.B.R. 7056-1(g) states what happens if a motion is not presented in compliance with the rule: "The Court may deny motions that do not comply with this Rule."

## VII.   The Undisputed Material Facts.

The Court's review of the MSJ and its search for facts that are both material and undisputed are informed and guided by Rule 56 and L.B.R. 7056-1.  As noted above, most of the purported allegations of material undisputed facts in the MSJ have not been properly supported.  Technically, the Court could deny the MSJ for failure to comply with the foregoing procedural rules.  But, as provided for by Fed. R. Civ. P. 56(c)(3), the Court may consider other parts of the record.  Moreover, Fed. R. Civ. P. 56(g) provides a mechanism which may serve to streamline the trial.  Rule 56(g) permits the Court to consider the facts which may be established by the record for the case overall: "If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact — including an item of damages or other relief — that is not genuinely in dispute and treating the fact *as established in the case*."  Fed. R. Civ. P. 56(g) (emphasis added).

The material facts to be considered for purposes of the MSJ are the few facts alleged in the Complaint which have been admitted by the Debtor in his Answer.  The Debtor admitted that Exhibits 1 and 2 are true and correct copies of the Judgment and Wage Action Complaint.  As such, the Court may use the Judgment and Wage Action Complaint as material facts.  Notably, the Pritchetts did not provide the Court with transcripts from the trial in the Wage Action or the jury instructions in the Wage Action.

**A.      The Undisputed Procedural Facts**.

The Procedural Background section of this Order includes basic procedural facts, such as when the Debtor filed his Chapter 7 Main Case, the status of the Main Case and when the Pritchetts filed their Complaint.  The Court incorporates such procedural facts rather than repeating them.

**B.      The Wage Action Complaint**.

There is no dispute that the Pritchetts were employed by Cannabis and that they took sick leave in late November 2022.  (Compl. ¶ 13; Ans.¶ 8.)  When they returned from sick leave, Cannabis withheld their wages.  The Debtor admits that "after receiving no response to several written demands for the final paychecks, the Pritchetts initiated the Wage Action . . . Among other claims, the Pritchetts filed claims against Rinker for willful violation of HFWA and the CWCA."  (Compl. ¶ 16; Ans. ¶10.)

The Wage Action Complaint includes five causes of action: (1) Failure to Pay Wages in Violation of CWCA against all defendants; (2) Violation of the HFWA against all defendants; (3) two claims, one for Breach of Contract and a second for Promissory Estoppel, brought only by Ms. Pritchett against all defendants; and (4) a claim for Retaliation in Violation of COLO. REV. STAT. §§ 8-4-120 against all defendants.  (Compl. Ex. 2, at 10-13.)

This Court, however, is able to draw only limited facts from it.  At best, the Pritchetts have established that they filed the Wage Action Complaint in the Wage Action, the date it was filed,.  The Pritchetts have also established what they alleged in the Wage Action Complaint and the causes of actions they brought against the Debtor in the State Court.  The Court cannot consider any of the allegations of the Wage Action Complaint as true or established for purposes of this MSJ.

**C.      The Facts Established by the Judgment**.

The Debtor has admitted that the Judgment (Exhibit 1 to the Complaint) is a true and correct copy of the Judgment entered in the Wage Action.  (Compl. ¶ 5; Ans. ¶ 3.)  The Judgment provides:

> Judgment shall enter jointly and severally against Defendant, Jeff Mascio, Patrick James Rinker, and Theresa Mohan in the total amount of $528,355.52 as follows:

10

1. Unpaid Wages or Compensation

   a. Plaintiff Jessica Pritchett is awarded $13,735.56 in unpaid wages or compensation and interest in the amount of $1,390.87.

   b. Plaintiff Andrew Pritchett is awarded $7,937.47 in unpaid wages or compensation and interest in the amount of $803.75.

2. Willful Wrongful Withholding-Colorado Wage Claim Act, Section 109(3)(b)

   a. Plaintiff Jessica Pritchett is awarded $41,206.68 in trebled damages.

   b. Plaintiff Andrew Pritchett is awarded $23,812.34 in trebled damages.

3. Willful Non-Permitted Deduction-Colorado Wage Claim Act, Section 105(1)(c)

   a. Plaintiff Jessica Pritchett is awarded $41,206.68 in trebled damages.

   b. Plaintiff Andrew Pritchett is awarded $23,812.41 in trebled damages.

4. Retaliation-Healthy Families and Workplaces Act, Section 411(4)(b)

   a. Plaintiff Jessica Pritchett is awarded $43,000.00 for economic damages and $50,000.00 for non-economic damages.

   b. Plaintiff Andrew Pritchett is awarded $34,000.00 for economic damages and $50,000.00 for non-economic damages.

5. Plaintiffs are awarded their attorney fees in the amount of $184,729.00 and costs in the amount of $12,720.69.

Besides admitting the authenticity of the Judgment, the Debtor admitted that the State Court adjudged that he was "jointly and severally" liable to the Pritchetts in the amount of $528,355.52.  (Compl. ¶¶ 6 and 12; Ans. ¶¶ 3 and 7.)

For purposes of the MSJ on the Complaint under Section 523(a)(6), the Pritchetts must establish that the Debtor's conduct was both willful and malicious *within the meaning of Section 523(a)(6)*.  Through the Wage Action Complaint, the Pritichetts brought a claim against the Debtor and the codefendants for willful conduct under both the HFWA and the CWCA.  The Judgment includes shorthand references to the provisions of the HFWA and CWCA such as "Willful Wrongful Withholding;" "Willful Non-Permitted Deduction;" and "Retaliation."  But there are no corresponding *specific findings* of the Debtor's willful conduct.  And, the Judgment did not reference malicious conduct at all.

## VIII.   Applicable Law and Legal Analysis.

### A.   Law Applicable to Collateral Estoppel.

The Pritchetts request that the Court apply the doctrine of collateral estoppel. They contend that the Judgment meets all of the requirements for Section 523(a)(6) nondischargeability; so the Court can rely on the Judgment in the Wage Action and now enter summary judgment in favor of the Pritchetts in this Adversary Proceeding.

Collateral estoppel, or issue preclusion, prevents a party who has already litigated an issue and lost from relitigating the same issue in a different lawsuit.  *Melnor, Inc. v. Corey (In re Corey)*, 583 F.3d 1249, 1251 (10th Cir. 2009).  The doctrine "is intended to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication."  *Nichols v. Bd. of Cnty. Comm'rs*, 506 F.3d 962, 967 (10th Cir. 2007) (quoting *Bebo Constr. Co. v. Mattox & O'Brien, P.C.*,  990 P.2d 78, 84 (Colo.1999). "Collateral estoppel applies in bankruptcy court actions to determine the dischargeability of a debt."  *McCain Foods USA Inc. v. Shore (In re Shore)*, 317 B.R. 536, 541 (10th Cir. BAP 2004) (citing *Grogan*, 498 U.S. at 284 n.11).

"Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case."  *Allen v. McCurry*, 449 U.S. 90, 94 (1980); *see also Marvel Characters, Inc. v Simon,* 310 F.3d 280, 288 (2d Cir. 2002) ("Collateral estoppel, or issue preclusion, prevents parties or their privies from relitigating in a subsequent action an issue of fact or law that was fully and fairly litigated in a prior proceeding.").

"The Full Faith and Credit Act, 28 U.S.C. § 1738, requires a federal court to give the same preclusive effect to a state-court judgment that the judgment would be given in the courts of the state in which the judgment was rendered."  *Jiron v. City of Lakewood,* 392 F.3d 410, 415-16 (10th Cir. 2004).  Further, the rules of preclusion are determined

by the law of the forum in which the previous judgment was rendered. *Marrese v. American Acad. of Orthopedic Surgeons*, 470 U.S. 373, 380 (1985). Under *Marrese*, the law of the forum in which the prior judgment was rendered must be applied to determine the preclusive effect of the judgment. *Id.*, at 380. The Judgment was issued by the State Court in Colorado. So, Colorado collateral estoppel law applies.

Under Colorado law, collateral estoppel bars relitigation of an issue if: (1) the issue sought to be precluded is identical to an issue "actually determined" in the prior proceeding; (2) the party against whom estoppel is asserted was a party to or in privity with a party to the prior proceeding; (3) there was a final judgment on the merits in the prior proceeding; and (4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issues in the prior proceeding. *Sunny Acres Villa, Inc. v. Cooper,* 25 P.3d 44, 47 (Colo. 2001).

In *Jiron,* 392 F.3d 410, the Tenth Circuit utilized the *Sunny Acres Villa* formulation but also discussed prior Colorado Supreme Court collateral estoppel precedent.

> Although *Sunny Acres Villa* is a recent statement by the Supreme Court of Colorado of the four elements of collateral estoppel, that court has previously articulated the first element of the analysis in a slightly different manner. Specifically, the court has articulated the first element to require that "[t]he issue precluded is identical to an issue *actually litigated and necessarily adjudicated* in the prior proceeding." *Bebo Constr. Co. v. Mattox & O'Brien, P.C.,* 990 P.2d 78, 84-85 (Colo.1999) (emphasis added). The court clarified that "actually litigated and necessarily adjudicated" is simply a way of defining the term "actually determined." *Id.* at 85 n.3 (stating that when an issue is properly raised, submitted for determination, and determined, "the issue is actually litigated") (citing *Restatement (Second) of Judgments* § 27 cmt. d (1980)). Accordingly, the essential inquiry under the first element is whether the issue sought to be precluded was "actually determined" in the prior proceeding.

*Id.* at 416.

In this Adversary Proceeding, the Pritchetts easily satisfy the second, third, and fourth elements of the *Sunny Acres Villa* analysis for collateral estoppel by reference to the Judgment. The party against whom estoppel is asserted (the Debtor) was a party to or in privity with a party to the prior proceeding (*i.e.*, the Wage Action). There was a final judgment on the merits in the Wage Action: the State Court issued the Judgment. And,

the party against whom the doctrine is asserted (the Debtor) had a full and fair opportunity to litigate the issues in the prior proceeding (*i.e.,* the Wage Action.)

So, whether collateral estoppel may be used by the Pritchetts in order to secure summary judgment in this Adversary Proceeding really comes down to the first *Sunny Acres Villa* requirement: whether "the issue sought to be precluded is identical to an issue 'actually determined' in the prior proceeding." That requires the Court to delve into federal nondischargeability law.

## B.   The General Framework for Dischargeability Determinations.

Section 523(a) nondischargeability claims all require a two-part analysis. First, "the bankruptcy court must determine the validity of the debt under applicable law." *Hatfield v. Thompson (In re Thompson)*, 555 B.R. 1, 8 (10th Cir. BAP 2016); *see also Lang v. Lang (In re Lang)*, 293 B.R. 501, 513 (10th Cir. BAP 2003) (if the alleged debt is for fraud, "state law of fraud controls with respect to whether fraud has occurred"). This is referred to as the "claim on the debt" component. *Thompson*, 555 B.R. at 8. Second, if there is a valid debt, "the bankruptcy court must determine the dischargeability of that debt under Section 523." *Id.*; *see also Lang*, 293 B.R. at 513 ("bankruptcy law controls with respect to the determination of nondischargeability"). This is referred to as the "dischargeability" component. *Thompson*, 555 B.R. at 8.

The Undisputed Facts are sufficient to establish the "claim on the debt" component of the two-step analysis. Consequently, pursuant to Fed. R. Civ. P. 56(g) the Court concludes that the claim on debt component is established in the case for purposes of the trial on the Complaint and Answer. The Court finds that per the Judgment, the Debtor is indebted to the Pritchetts in the amount of the Judgment: $528,355.52 (at least).

## C.   Willful and Malicious Elements of Section 523(a)(6).

The second part of the dischargeability analysis requires the Court to decide whether the Judgment or any part of it is nondischargeable as a matter of federal bankruptcy law under Section 523(a). The Pritchetts' sole claim in the Complaint seeks to except the Judgment from the Debtor's discharge under Section 523(a)(6). Section 523(a)(6) succinctly provides for the nondischargeability of any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity."

As the text of the statute makes plain, nondischargeability under Section 523(a)(6) requires both a "willful injury" and a "malicious injury." *Panalis v. Moore (In re Moore)*, 357 F.3d 1125, 1129 (10th Cir. 2004) ("Without proof of *both* [willful and malicious injury], an objection to discharge [under Section 523(a)(6)] must fail.") (emphasis in original); *Glencove Holdings, LLC v. Bloom (In re Bloom)*, 2022 WL 2679049, at *7 (10th Cir. July 12, 2022) (unpublished) ("to determine nondischargeability under § 523(a)(6) we must review whether Mr. Bloom caused both a willful and malicious injury."). Stated differently, Section 523(a)(6) "requires proof of

14

two distinct elements — the injury must be both 'willful' *and* 'malicious.' Analyzing and applying 'willful' and 'malicious' separately is the better approach." *First Am. Title Ins. Co. v. Smith (In re Smith)*, 618 B.R. 901, 912 (10th Cir. BAP 2020). *See also Flatirons Bank v Van Walch (In re Van Walch)*, Case No. 24-cv-01829 DDD, Doc. No. 29, (D. Colo. Sept. 24, 2025) (unpublished).

### 1.   The Pritchetts Are Not Entitled to a Collateral Estoppel Determination that the Debtor Committed a Willful Injury under Section 523(a)(6).

According to the United States Supreme Court, to satisfy the willful injury part of Section 523(a)(6), the Bank must prove "a deliberate or intentional *injury*, not merely . . . a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998) (emphasis in original). So the focus is whether the debtor acted with the "actual intent to cause injury." *Id.* "Willful" injury is a higher standard than "'reckless' or 'negligent'" injury. *Id.* Thus, "debts arising [merely] from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)." *Id.* at 64.

Explaining further, the Supreme Court observed that:

> [T]he (a)(6) formulation triggers in the lawyer's mind the category "intentional torts," as distinguished from negligent or reckless torts. Intentional torts generally require the actor to intend "the *consequences* of an act," not simply "the act itself."

*Id.* at 61-62 (emphasis in original).

To establish a willful injury, a creditor may use "direct evidence that the debtor acted with the specific intent to harm a creditor or the creditor's property, or . . . indirect evidence that the debtor desired to cause the injury or believed the injury was substantially certain to occur." *Smith*, 618 B.R. at 912. *See also Moore,* 357 F.3d at 1129 ("to constitute a willful act under § 523(a)(6), the debtor must 'desire . . . [to cause] the consequences of his act or . . . believe [that] the consequences are substantially certain to result from it'"); *Cocoma v. Nigam (In re Nigam)*, 780 Fed. Appx. 559, 563 (10th Cir. 2019) (unpublished table decision) (reaffirming *Moore* formulation of willful injury); *Via Christi Reg'l Med. Ctr. v. Englehart (In re Englehart)*, 229 F.3d 1163, at *3 (10th Cir. Sept. 8. 2000) (unpublished table decision) ("§ 523(a)(6) turns on the state of mind of the debtor, who must have wished to cause injury or at least believed it was substantially certain to occur.") It is a subjective standard. *Smith*, 618 B.R. at 912.

The Court notes that indirect evidence (including circumstantial evidence) can suffice under Section 523(a)(6). *Longley*, 235 B.R. at 657 ("[w]illful injury may also be established indirectly"). Per appellate precedent, "indirect evidence that the debtor desired to cause the injury or believed the injury was substantially certain to occur" satisfies the Section 523(a)(6) "willful injury" requirement. *Longley*, 235 B.R. at 657; *Smith*, 618 B.R. at 912 (citing *Longley*, 235 B.R. at 657, and *Moore*, 357 F.3d. at 1129).

15

The Tenth Circuit has referred to such principal as "subjective substantial certainty" which "extends the scope of intent well beyond the compass of evil motive, without extending it to so far as to include consequences entirely outside the actor's ken . . . ." *Englehart*, 229 F.3d 1163, at *3 (quoting RESTATEMENT (2D) OF TORTS § 8A (ALI 1965) with approval: "A has no desire to injure C, but knows that his act is substantially certain to do so.  C is injured by [A's act].  A is subject to liability to C for an intentional tort.").

In the MSJ, the Pritchetts are left solely with the Judgment to establish the willful element of Section 523(a)(6) by virtue of collateral estoppel.  They seek to preclude the Debtor from litigating willfulness in this Adversary Proceeding based on the very summary notations in the Judgment.  However, the Judgment is insufficient to establish the willful element within the meaning employed in Section 523(a)(6).  The Judgment is conclusory and includes only two headings which include the word "willful" in relation to the CWCA claims.  The State Court did not use the word "willful" with reference to any other claims asserted in the Complaint (such as general entitlement to general unpaid wages or compensation or retaliation under the HFWA).  In any event, the State Court provided no corresponding factual findings.  And, the Pritchetts did not provide a transcript of the Wage Action trial or the jury instructions which led to the Judgment.

Furthermore, the headings of the sections in the Judgment awarding treble damages refer only to the section of the CWCA under which the award is granted: "Colorado Wage Claim Act, Section 109(3)(b)"[5] and "Colorado Wage Claim Act, Section 105(1)(c)."[6] Judgment ¶¶ 2 and 3.

---

[5]     COLO. REV. STAT. § 109(3)(b) governs the payments an employer is required to make upon an employee's termination and the consequences if the employer fails to timely compensate the employee. The penalty section is as follows:

> [I]f an employer fails or refuses to pay, in the manner specified in subsection (3)(d) of this section, all earned, vested, and determinable wages or compensation within fourteen days after a written demand is sent or within fourteen days after a civil action or administrative claim for the wages or compensation is sent to or served on the employer, the employer is liable to the employee or group of similarly situated employees for the amount of the earned, vested, determinable, and unpaid wages or compensation plus an automatic penalty of:
>
> > (I) The greater of two times the amount of the unpaid wages or compensation or one thousand dollars; or
> > (II) If the employee can show that the employer's failure or refusal to pay wages or compensation was *willful*, the greater of three times the amount of the unpaid wages or compensation or three thousand dollars.

COLO. REV. STAT. § 8-4-109(3)(b) (emphasis added).

[6]     COLO. REV. STAT. § 8-4-105(1)(c), which addresses deductions an employer may rightfully withhold from an employee's final paycheck and the remedies available to the employee if the employer makes a wrongful deduction, provides in pertinent part:

> Any deduction necessary to cover the replacement cost of a shortage due to theft by an employee if a report has been filed with the proper law enforcement agency in connection with such theft pending a final

But, the meaning of the term "willful" under the CWCA seems to be quite different than under Section 523(a)(6).  For example, Colo. Rev. Stat. 8-4-109(3)(c) states:

> Evidence that a judgment or wage determination of the division has, *within the previous five years, been entered against the employer for failure to pay wages or compensation is admissible as evidence of willful conduct. An employer's failure or refusal to pay wages or compensation is per se willful if the employee can show that the claim for which a penalty under subsection (3)(b) of this section is assessed is the employer's second or subsequent failure or refusal to pay to employees wages or compensation of the same or similar type within the five years immediately preceding the claim.*

Colo. Rev. Stat. § 8-4-109(3)(c) (emphasis added).  Thus, the CWCA seems to allow a finding of willfulness based, in part, on whether the employer failed to pay wages or compensation *to someone else* within the last five years.  And, the CWCA introduces a "per se willful" concept based on a finding of multiple violations of wage and compensation law within the last five years.  CWCA's "per se willful" concept does not align with the willful requirement of Section 523(a)(6).

Notably, the text of CWCA does not expressly require a showing of "actual intent to cause injury."  And, the Colorado Court of Appeals, in construing the CWCA, has ruled that "[w]illful withholding does not require a showing of malice or other motive, but merely requires a showing that the compensation was withheld without good cause." *Hartman v. Cmty. Resp. Ctr., Inc.*, 87 P.3d 202, 208 (Colo. App. 2003) (referring to the then-applicable version of CWCA at Colo. Rev. Stat. § 8-4-104(3)).  But willfulness under Section 523(a)(6) requires something much more: "actual intent to cause injury." *Kawaauhua*, 523 at 61.

---

> adjudication by a court of competent jurisdiction; except that, if the accused employee is found not guilty in a court action or if criminal charges related to such theft are not filed against the accused employee within ninety days after the filing of the report with the proper law enforcement agency, or such charges are dismissed, *the accused employee shall be entitled to recover any amount wrongfully withheld plus interest. In the event an employer acts without good faith, in addition to the amount wrongfully withheld and legally proven to be due, the accused employee may be awarded an amount not to exceed treble the amount wrongfully withheld. In any such action the prevailing party shall be entitled to reasonable costs related to the recovery of such amount including attorney fees and court costs.*

Colo. Rev. Stat. 8-4-105(1)(c) (emphasis added).  Other sections of CWCA impose the penalties provided for in Colo. Rev. Stat. § 8-4-109 when the employer does not comply.  See Colo. Rev. Stat. 8-4-105(1)(e)(II)(A) and (1)(e)(IV).

The Court finds instructive *Michalski v. Duvall (In re Duvall)*, 2009 WL 3367092 (Bankr. D. Colo. Oct. 9, 2009). In that case, the plaintiffs tried to use the doctrine of collateral estoppel to give preclusive effect to a Colorado state court spurious lien judgment and thereby secure summary judgment on a subsequent Section 523(a)(6) claim. But Judge Tallman distinguished the elements required for a Section 523(a)(6) action from those necessary for a spurious lien claim. The Court held that the Spurious Lien Statute, COLO. REV. STAT. § 38-35-201(4), "requires no inquiry into the intent of the filer as an element of relief. There is no requirement in the spurious lien statute that the Court find an intent to harm or legal malice as a requirement for providing relief." *Duvall*, 2009 WL 3367092, at *5. Accordingly, the *Duvall* court refused to apply the state court spurious lien judgment under the doctrine of collateral estoppel as a short-cut to obtain summary judgment on a Section 523(a)(6) claim. The foregoing can be contrasted with decisions giving collateral estoppel effect to theft judgments in subsequent Section 523(a)(6) cases. Generally, Colorado state court theft judgments may be afforded collateral estoppel effect in subsequent Section 523(a)(6) cases. *See C-Ball Ventures, LLC v. Oltmann (In re Oltmann)*, 505 B.R. 311, 317 (Bankr. D. Colo. 2014) ("The Defendant's knowing conduct, necessarily found as part of the County Court's judgment on the theft allegation, is precisely the conduct required to prove the willfulness prong of § 523(a)(6)").

Notably, the Pritchetts have not cited any precedent suggesting that judgments under the CWCA or HFWA should be afforded collateral estoppel effect in subsequent Section 523(a)(6) cases. The Court's own independent investigation indicates that no such reported decisions exist. The Court suspects that the reason that no CWCA or HFWA judgments have been applied preclusively in Section 523(a)(6) cases is because the elements of such claims (especially intent) are so different. And, the unexplained use of the word "willful" in the Judgment does not fix the problem.

The absence of specific factual findings in the Judgment supporting the State Court's conclusion that the Debtor's and his codefendants' conduct was "willful" within the meaning of the CWCA (along with the absence of jury instructions and a transcript of the Wage Action trial), make it impossible to determine that the Debtor's conduct was "willful" within the meaning of the term under Section 523(a)(6). The standards are different. As such, the Court concludes that the Pritchetts have failed to establish that the Judgment may be used to collaterally estop the Debtor from relitigating the "willful" element of Section 523(a)(6).

## 2. The Pritchetts Are Not Entitled to a Collateral Estoppel Determination that the Debtor Committed a Malicious Injury under Section 523(a)(6).

Without a willful injury, the Court need not reach whether the Debtor acted maliciously as the Pritchetts allege. That is because the text of Section 523(a)(6) requires both a "willful injury" *and* a "malicious injury." *Moore*, 357 F.3d at 1129 ("Without proof of *both* [willful and malicious injury], an objection to discharge [under Section 523(a)(6)] must fail.") (emphasis in original); *Glencove Holdings*, 2022 WL

2679049, at *7 (10th Cir. July 12, 2022) (unpublished) ("to determine nondischargeability under § 523(a)(6) we must review whether Mr. Bloom caused both a willful and malicious injury."); *First Am. Title Ins. Co.*, 618 B.R. at 912 (Section 523(a)(6) "requires proof of two distinct elements — the injury must be both 'willful' *and* 'malicious.' Analyzing and applying 'willful' and 'malicious' separately is the better approach.").

Nevertheless, in the interest of achieving a more efficient and focused trial, the Court addresses the Pritchetts' contentions that the Debtor retaliated against them and emphasizes what is required under Section 523(a)(6) to establish "malicious" conduct.

The Pritchetts charge that

> [a]s demonstrated in the Wage Action, Rinker willfully and maliciously retaliated against the Pritchetts for using sick leave protected by the HFWA, misrepresented the existence of a law enforcement investigation, suspended the Pritchetts without pay, made non-permitted deductions to the Pritchetts' wages, willfully withheld the Pritchetts' final paychecks, fabricated a theft, and filed sham reports and counterclaims against the Pritchetts.

(MSJ at 2.) The applicable sections of the HFWA prohibit employers from retaliating against employees who exercise their rights under the HFWA.[7] In common parlance, the words "retaliate" or "retaliation" may sound synonymous with "willful and malicious injury." But, the HFWA defines the term "retaliatory personnel action" very specifically and does not require an element of malice. COLO. REV. STAT. § 8-13.3-402(10).[8] *See*,

---

[7]   COLO. REV. STAT. § 8-13.3 407(2)(a).

[8]   The HFWA provides the following definition:

(10) "Retaliatory personnel action" means:
    (a) The denial of any right guaranteed under this part 4; or
    (b) Any adverse action against an employee for exercising any right guaranteed in this part 4, including:

        (I) Any threat, discipline, discharge, suspension, demotion, reduction of hours, or reporting or threatening to report an employee's suspected citizenship or immigration status or the suspected citizenship or immigration status of a family member of the employee to a federal, state, or local agency; or
        (II) Any sanctions against an employee who is the recipient of public benefits for rights guaranteed under this part 4; or
        (III) Interference with or punishment for participating in or assisting, in any manner, an investigation, proceeding, or hearing under this part 4.

*e.g.*, *Hartman*, 87 P.3d at 208 (under the CWCA, "[w]illful withholding [deducting from wages] does not require a showing of malice or other motive but merely requires a showing that the compensation was withheld without good cause."). And if an employee prevails in a civil action for retaliation, the statute provides for economic and liquidated damages as stated in COLO. REV. STAT. § 8-5-104.[9]

The concept of "retaliation" within the HFWA is not synonymous with the "malicious" element of Section 523(a)(6). The mere use of the word "Retaliation" in the Judgment is insufficient to grant the Pritchetts summary judgment with respect to "malicious injury" under Section 523(a)(6). Recall that the Judgment itself did not make any determination of maliciousness or include any factual findings from which this Court could find that the element of "malicious injury" has been established for Section 523(a)(6). Moreover, it was not necessary for the jury to address malicious injury either.

In any event, the standard for "malicious" injury is different than "willful" injury. Something else is required. But what? The most recent binding appellate decision on Section 523(a)(6) puts it this way:

> [M]alicious injury requires "evidence of the debtor's motives."
> *In re Smith*, 618 B.R. 901, 919 (B.A.P. 10th Cir. 2020)
> (quotation marks omitted). To be malicious, the debtor must
> have "acted with a culpable state of mind vis-à-vis the actual
> injury caused the creditor." *Id.* (quotation marks omitted).
> The malicious injury requires that the action be "wrongful
> and without just cause or excuse." *Id.*

*Bloom*, 2022 WL 2679049, at *7. *See also Smith*, 618 B.R. at 919. The Tenth Circuit also explained:

---

[9]     The HFWA provides the remedies to an employee who alleges retaliation as follows:

(4)(a) A person aggrieved by a violation of this part 4 may commence a
civil action in district court no later than two years after the violation occurs.
A violation of this part 4 occurs on each occasion that a person is affected
by a failure to provide paid sick leave or retaliation related to paid sick
leave.
. . . .
(b)(II) Beginning January 1, 2022, an employer who violates this part 4 is
liable for back pay and any other relief as provided by section 8-5-
104(2)(a) and (2)(b).

COLO. REV. STAT. § 8-13.3-411. Section 8-5-104 referenced in the HFWA is a section within the "Wage Equality Regardless of Sex, "COLO. REV. STAT. §§ 8-5-101 *et. seq.* and provides for an award of economic damages and liquidated damages. If, however, the employer can demonstrate that the act was "in good faith and that the employer had reasonable grounds for believing that the employer did not [discriminate between employees on the basis of sex in combination with another protected status], the court shall not award liquidated damages." COLO. REV. STAT. § 8-5-104(1)(b)(II).

> [P]ersonal animus is not a requirement for malicious injury.
> *Smith*, 618 B.R. at 919 (describing the requirements for
> malicious injury); *see also Ball v. A.O. Smith Corp.*, 451 F.3d
> 66, 69 (2d Cir. 2006) (explaining malicious injury means
> "wrongful and without just cause or excuse, even in the
> absence of personal hatred, spite, or ill-will (quoting *In re
> Stelluti*, 94 F.3d 84, 87 (2d Cir. 1996)).

*Id*. So, malice can be shown if the injury was wrongful and inflicted "without just cause or excuse." *Wagner v. Wagner (In re Wagner)*, 492 B.R. 43, 55 (Bankr. D. Colo. 2014) (emphasis omitted), *aff'd*, 527 B.R. 416 (10th Cir. BAP 2015); *Steward Software Co., LLC v. Kopcho (In re Kopcho)*, 2014 WL 3933657, at *6 (Bankr. D. Colo. Aug. 12, 2014) (same). In assessing the presence or absence of "malicious injury," the totality of the circumstances must be examined. *Dorr, Bentley & Pecha, CPA's, P.C. v. Pasek (In re Pasek)*, 983 F.2d 1524, 1527 (10th Cir. 1993) ("all the surrounding circumstances, including any justification or excuse offered by the debtor, are relevant to determining whether the debtor acted with a culpable state of mind" under Section 523(a)(6)); *Smith*, 618 B.R. at 919-20 (quoting *Pasek* "all the surrounding circumstances" language and holding that "the totality of the circumstances must be examined" to decide whether the debtor committed malicious injury).

The Judgment lacks any sort of maliciousness determination. And none is necessary under the HFWA or the CWCA. Consistent with the Court's conclusions as to the "willfulness" element, the lack of any specific facts supporting a finding of malicious injury in the Judgment and the differing legal standards under the CWCA, HFWA, and Section 523(a)(6), the Court cannot conclude that collateral estoppel applies. Again, the Pritchetts have failed to establish that collateral estoppel application of the Judgment may be used to show that the Debtor committed a malicious injury within the meaning of Section 523(a)(6).

## IX.   Conclusion and Orders.

The Pritchetts have failed to meet their burden to establish that the alleged undisputed facts entitle them to summary judgment in their favor on their Complaint in its entirety. Their MSJ does not meet the elementary requirements under both Fed. R. Civ. P. 56 and L.B.R. 7056. They did not provide adequate references to the record to establish what they allege are the material undisputed facts. The only facts which are material to this Adversary Proceeding and which the Court can consider undisputed are derived from the Judgment and the allegations of the Complaint which the Debtor admitted in his Answer. None of that supports application of the collateral estoppel doctrine in this Adversary Proceeding. Even if the Court accepted and considered the Jury Verdict Form (which was not properly presented and was disputed), the result would not change.

Pursuant to Fed. R. Civ. P. 56(g), even if the Court cannot grant the Pritchetts relief on the MSJ in its entirety, "it may enter an order stating any material fact . . . that is

not genuinely in dispute and treating the fact as established in the case." Fed. R. Civ. P. 56(g).  As shown above, the Judgment, along with the Debtor's Answer to certain of the allegations of the Complaint, establish the amount of the debt ($528,355.52) which the Debtor owes the Pritchetts thereby establishing the debt component of a Section 523(a) claim for relief.  However, the Pritchetts have failed to establish that the Debtor's conduct was willful and malicious within the meaning of Section 523(a)(6).  The Judgment is simply conclusory and provides no specific findings of fact to bind the Debtor and this Court for purposes of a motion for summary judgment.  Accordingly, the Court, hereby

**ORDERS** that the Pritchetts' MSJ is DENIED, in part, for the reasons stated above. The Pritchetts have not met their burden to obtain a summary determination that the entire amount of that Judgment should be excepted from the Debtor's discharge under Section 523(a)(6).  The Court

**FURTHER ORDERS** that the Pritchetts' MSJ is GRANTED, in part.  The Court concludes that the Pritchetts have established the amount of debt owed to them by the Debtor.  The amount of the debt included in the Judgment ($528,355.52 plus interest) is conclusively established for purposes of the debt component of the dischargeability action.  What remains to be determined for trial is whether and to what extent that debt should be excepted from the Debtor's discharge on grounds of willful and malicious injury under Section 523(a)(6).  The Court

**FURTHER ORDERS** that the two-day in person trial will proceed as set on the remaining issues commencing on TUESDAY, **November 4, 2025, commencing at 9:00 a.m.** in Courtroom E, United States Bankruptcy Court. 721 19th Street, Denver, Colorado.

DATED this 30th day of October 2025.

BY THE COURT:

*Thomas B. McNamara*

Thomas B. McNamara
United States Bankruptcy Judge